IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

STEPHANIE R. STOVALL                                                              PLAINTIFF

VS.                                                          CIVIL ACTION NO. 3:09cv614-DPJ-FKB

MICHAEL J. ASTRUE, COMMISSIONER
OF SOCIAL SECURITY                                                               DEFENDANT

**REPORT AND RECOMMENDATION**

Stephanie R. Stovall brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of the Social Security Administration. Presently before the Court are the parties' dispositive motions. Having considered the motions, the memoranda in support of the motions, and the administrative record, the undersigned recommends that Plaintiff's motion be denied and that the Commissioner's motion be granted.

**I. Procedural History and Administrative Record**

Plaintiff filed for a period of disability, disability insurance benefits, and supplemental security income on June 15, 2006, alleging a disability onset date of June 6, 2006 as a result blood clots, breathing problems, and leg pain. Her applications were denied both initially and on reconsideration, and she requested and was granted a hearing before an administrative law judge (ALJ). The ALJ issued a hearing decision on April 2, 2009, finding that Stovall was not disabled. The Appeals Council denied review,

thereby making the decision of the ALJ the final decision of the Commissioner. Plaintiff then brought this appeal pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Plaintiff was born on June 29, 1969, and was forty years of age at the time of the ALJ's decision. She has a high school certificate in special education and past relevant work experience as a school cook, house cleaner, assistant manager of a fast food restaurant, counter attendant at a fast food restaurant, fast food cook, and fast food worker. The ALJ determined that Plaintiff has the severe impairments of obesity, degenerative disc disease, and depression. He further concluded that Plaintiff's impairments do not, either singly or in combination, meet or medically equal the criteria of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the listings). In assessing Plaintiff's residual functional capacity (RFC), the ALJ found that while Plaintiff's impairments could reasonably be expected to cause some of her alleged symptoms, her statements concerning the intensity, persistence and limiting effects of those symptoms were not credible to the extent alleged. He determined that Plaintiff has the residual functional capacity to perform sedentary work, with the further limitation that she is restricted to performing only simple, repetitive tasks. Relying upon the testimony of a vocational expert (VE), the ALJ determined that Plaintiff could not perform her past relevant work but that, considering her age, education, work experience and RFC, she could perform other jobs in the local and national economies, including the jobs of surveillance monitor, lens inserter, and order clerk.

## II. Law and Standard of Review

In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

(1) whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);

(2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);

(3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);

(4) whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and

(5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. §§ 404.1520 and 416.920.  The analysis ends at the point at which a finding of disability or non-disability is required.  The burden to prove disability rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining her burden through step four, the burden then shifts to the Commissioner at step five.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

In reviewing the Commissioner's decision, this Court is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the Commissioner applied the correct legal standards.  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a

preponderance. . . ." *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989) (quoting *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987)).  If the Commissioner's decision is supported by substantial evidence, it is conclusive and must be affirmed, *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)), even if the court finds that the preponderance of the evidence is *against* the Commissioner's decision, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

### III. **Arguments of Plaintiff**

*A. Alleged Errors at Step Two of the Sequential Process*

In support of reversal of the Commissioner's decision, Plaintiff attacks the decision of the ALJ at step two on several grounds.  Plaintiff contends, first, that the ALJ erred by failing to find that Plaintiff suffers from the additional severe impairments of greater trochanteric bursitis of the hip, breathing problems, borderline intellectual functioning vs. mild mental retardation, and psychosis associated with her depression.  The undersigned deals with each of these alleged impairments in turn, keeping in mind the  well-established Fifth Circuit law concerning the step two analysis:  "[A]n impairment can be considered not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."  *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).

The medical record indicates that in November of 2008, Plaintiff was seen at the Mississippi Sports Medicine Clinic for complaints of left hip pain.  R. 451.  Plaintiff was

diagnosed with trochanteric bursitis and treated with a steroid injection to the hip and several sessions of physical therapy. There is no indication that treatment was not successful. The undersigned concludes that the ALJ's implicit finding that this impairment would impose no more than a minimal impact on Plaintiff's ability to perform work-related activities is supported by substantial evidence

Furthermore, even if the ALJ erred in failing to identify bursitis as a severe impairment, Plaintiff has not shown that she was prejudiced by that failure. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected."). The ALJ found that Plaintiff's physical condition was such that she could perform only sedentary work.[1] This finding was based, in part, on the pain and limitations imposed by her degenerative disc disease. The ALJ further made clear that his limitation of Plaintiff to routine, repetitive tasks was based in part on Plaintiff's problems in concentration, caused by her chronic pain. Plaintiff has failed to show how the ALJ's analysis would have been more beneficial to her had he identified bursitis as a severe impairment.

The ALJ's rejection of Plaintiff's alleged breathing problems as a severe impairment is clearly supported by substantial evidence. Although Plaintiff has experienced some pulmonary problems, the medical records do not indicate any ongoing problems in this area, other then some mild shortness of breath. In June of 2006, Plaintiff

---

[1] Sedentary work involves lifting no more than ten pounds occasionally. Although a sedentary job is defined as one which involves sitting, some walking and standing may be involved. 20 C.F.R. §§ 404.1567(a) and 416.967(a).

developed bilateral pulmonary embolisms following a hysterectomy. R. 209-10. She was treated with Coumadin. Notes indicate that she continued to experience chest discomfort through September of 2006. R. 204, 293, 289. There is no indication of any further respiratory problem until December of 2007, when she presented to the emergency room at St. Dominic Memorial Hospital (St. Dominic) with complaints of shortness of breath and depression. Pulmonary exam was normal, and diagnosis was depression and pleuritic chest pain. R. 424-30. A few days later she was hospitalized for six days for treatment of depression. Again, one of her symptoms was shortness of breath. It appears that her shortness of breath during this time period may have been related to anxiety, as her initial diagnosis included anxiety reaction, chest x-ray was normal, and there is no other mention of pulmonary problems during her hospitalization. The only other mention in the medical record of problems in this area consists of a note from an emergency room visit for pain dated August 17, 2008, indicating that Plaintiff was wheezing. R. 264.

Plaintiff testified at the hearing that she suffers from some mild shortness of breath. However, there is no evidence that she suffers from any other respiratory problems on an ongoing basis or that her shortness of breath would impose more than a minimal impact on her ability to perform work-related activities. At the hearing, Plaintiff's counsel admitted that the pulmonary embolism had resolved without any continuing sequelae other than mild shortness of breath. R. 24. For these reasons, the undersigned concludes that the ALJ's finding that Plaintiff does not suffer from a severe respiratory impairment is supported by substantial evidence.

The third severe impairment advanced by Plaintiff is borderline intellectual functioning or mild mental retardation. The record does contain some suggestion of below-average intellectual functioning: Plaintiff's school records indicate that she did poorly in school, R. 190, and attended special education classes, R. 123, and she testified that she was "slow" in school. R. 38. Plaintiff's treating nurse practitioner at Weems Community Mental Health Center (Weems) on two occasions gave Plaintiff an Axis II diagnosis of mental retardation "per school records," R. 343, 356 and a later note by the nurse practitioner indicates an Axis II diagnosis of borderline intellectual functioning. R. 457. The ALJ considered this evidence along with the other evidence of record and concluded that Plaintiff had "demonstrated that her adaptive behavior is not that of one that is mentally retarded." In support of this conclusion, he noted that Plaintiff had raised two children, lives independently, has successfully worked at semi-skilled and skilled jobs, can fill out forms, and has a driver's license.

Furthermore, Plaintiff cannot show prejudice on this issue. Although the ALJ did not find that Plaintiff had the severe impairment of mental retardation, mild mental retardation, or borderline intellectual functioning, he performed the same detailed analysis (the "technique") that would have been required had he identified these as impairments, since this analysis was required once he found that she suffered from a mental impairment (depression).[2] He concluded that Plaintiff has mild restrictions in the activities

---

[2] If an ALJ determines that a claimant has a medically determinable mental impairment, he must analyze that impairment according to a special procedure, known as the "technique." 20 C.F.R. §§ 404.1520a and 416.920a. Under the technique the ALJ evaluates the claimant's limitations in four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation (the

7

of daily living, mild restrictions in social functioning, moderate restrictions in concentration, persistence or pace, and no episodes of decompensation which have been of extended duration. Accordingly, the undersigned concludes that substantial evidence supports the ALJ's determination that Plaintiff does not have the severe impairments of borderline intellectual functioning, mild mental retardation, or mental retardation.

Plaintiff contends that the ALJ erred in failing to identify psychosis as a severe impairment. The basis in the record for Plaintiff's position is the diagnosis of depression with psychosis given by Dr. Bishop, the psychiatrist who treated Plaintiff during her hospitalization for depression in December of 2007, and the statement of Plaintiff's nurse practitioner at Weems that her condition--depression with psychotic features--would cause her to miss more than four days of work per month. A careful analysis of Plaintiff's mental health records indicates that the ALJ did not err in this regard.

Plaintiff's records indicate she first sought treatment for depression in June of 2007 at Weems. A mental status exam performed on July 26, 2007, by Angela Morrison, a nurse practitioner, was normal except for a slightly depressed affect and only fair insight and judgment. R. 355-56. Ms. Morrison gave Plaintiff an Axis I diagnosis of major

---

part "B" criteria). A five-point scale of "none, mild, moderate, marked, and extreme" is used to rate the degree of limitation in the first three of those functional areas. 20 C.F.R. §§ 404.1520a(c)(1)-(4) and 416.920a (c)(1)-(4). These four separate areas are deemed essential for work. *Boyd v. Apfel,* 239 F.3d 698, 705 (5th Cir. 2001). After the ALJ rates the degree of functional limitation resulting from any mental impairment, he must determine the severity of such impairment. 20 C.F.R. §§ 404.1520a(d) and 416.920a(d). If he finds that the mental impairment is "severe" under 20 C.F.R. §§404.1520a(c)(1) or 416.920(a)(c)(1), he must then determine if it meets or equals a listed mental disorder. If the impairment is severe but does not reach the level of a listed disorder, then the ALJ must conduct an RFC assessment, as was done in the instant case. *See* 239 F.3d at 705.

depression, single episode, moderate severity.  She prescribed Zoloft.  From that date through November of 2007, Plaintiff received counseling or other treatment on a weekly or more frequent basis.  Mental status exams on October 15, 2007 and November 29, 2007 were essentially the same as the July exam.  R. 343, 336.  However, in early December of 2007, Plaintiff was hospitalized at St. Dominic for major depression after presenting to the emergency room with shortness of breath and reports of auditory and visual hallucinations.  Her mental status exam at St. Dominic showed affect was blunt and mood was dysphoric; thought was logical, coherent and goal-directed; of particular note, there were no delusions or hallucinations; speech was articulated, fluent, and normally productive; memory and orientation were intact; judgment and insight were fair; and no suicidal or homicidal ideations were present.   Dr. Bishop, her attending psychiatrist, gave her an Axis I diagnosis of major depression, single episode with psychosis, and an Axis V score (the Global Assessment of Functioning (GAF)) of "about 30."[3]  R. 407-10.

      After discharge from St. Dominic, Plaintiff continued to receive treatment at Weems.  Subsequent Weems notes indicate that she experienced general improvement over the next several months, although she continued to suffer from periods of depression because of family problems and chronic pain.  Follow-up mental status exams, all performed by Ms. Morrison,  were essentially the same as her prior ones at Weems: Plaintiff consistently displayed logical thought process and appropriate thought content, insight and judgment were fair, and she was alert and oriented with appropriate

---

[3]The Global Assessment of Functioning is a standard measurement of an individual's overall psychological, social, and occupational functioning on a scale of 1-100, with 100 representing "superior functioning."  American Psychiatric Institute, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994).

grooming.   R. 302, 315, 331-32, 322-23.  However, Ms. Morrison in her diagnosis at the end of each mental status evaluation carried forward Dr. Bishop's Axis I diagnosis of major depression with psychotic features.  Moreover, on October 20, 2008, Angela Morrison completed a medical assessment form, in which she stated that Plaintiff was being treated for depression with psychotic features and that Plaintiff's impairment would likely cause her to miss more than four days of work a month. R. 448-49.

It is clear from these records that Plaintiff has experienced only one isolated incident of psychosis associated with her depression and that all subsequent references to psychosis by Ms. Morrison represent merely a carrying forward of Dr. Bishop's diagnosis during Plaintiff's relatively brief hospitalization.  The only other mention of psychosis is in connection with what appears to have been a drug reaction:  A Weems note, dated November 17, 2008, states that Plaintiff reported some psychosis after receiving a steroid injection and oral steroids for pain treatment.  R.  457.  She immediately discontinued the tablets, and there is no indication of any recurrence of psychosis.

The ALJ gave careful consideration to these references to psychosis, particularly in connection with his consideration of Ms. Morrison's opinion that Plaintiff would be absent from work more than four times per month because of "depression with psychosis."  He noted that Ms. Morrison's notes contemporaneous with this opinion indicated that Plaintiff was doing well and was experiencing no psychotic symptoms, and he rejected her opinion as inconsistent with her own notes and the other medical evidence.  The ALJ did not err in concluding that Plaintiff did not suffer from the severe impairment of psychosis.

*B. Alleged Errors at Step Three*

Plaintiff advances several attacks on the ALJ's findings at step three of the sequential evaluation. First, she contends that the ALJ erred in denying her request for a post-hearing consultative exam to determine whether she meets the listing for mental retardation. An ALJ considering a disability claim has a duty to fully and fairly develop the relevant facts. *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000). The question of whether the ALJ fully and fairly developed the record turns on whether the record contained sufficient evidence for him to make an informed decision. If it does, he need not have supplemented with additional evidence. *Hernandez v. Astrue* 269 Fed.Appx. 511, 515, (5th Cir. 2008). In the present case, the record contains sufficient evidence for the ALJ to make a determination as to the nature and extent of Plaintiff's mental impairment. As stated above, the medical and non-medical evidence concerning Plaintiff's adaptive skills virtually rules out any possibility that she meets the listing for mental retardation. And, again, the Plaintiff never alleged disability on this basis until the administrative hearing.

Plaintiff argues that the ALJ committed additional error at step three in not finding that her back pain meets listing 1.04A. To meet this listing, a claimant must have a disorder of the spine accompanied by

> [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

Plaintiff suffers from an herniated disc, as documented by an MRI performed at St.

Dominic on February 26, 2008.  The MRI revealed a small or small to moderate left paracentral disc protrusion at L5-S1 with mild posterior displacement of the left S1 nerve root.  There was no significant canal narrowing.  R. 392.  An orthopedic evaluation on March 26, 2008, revealed Plaintiff to have a decreased range of motion in her hips, knees and ankles, and decreased strength in her left lower extremities.  The record indicates ongoing treatment for radiculopathy resulting from this condition.  However, there is no evidence in the record of sensory or reflex loss.  Straight leg raising tests performed on October 29, 2007 and on November 7, 2008 were "moderately abnormal" and "mildly positive" with pain to the foot, respectively; however, there is no indication that these tests were performed in both sitting and supine positions, as required by the listing.  R. 441, 451.

"For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  The ALJ reviewed the evidence relating to Plaintiff's disc disease and associated pain and concluded that her impairment, although severe, did not meet the listings.  This finding is supported by substantial evidence.

*C.  Alleged Errors at Step Four*

Plaintiff contends that the ALJ erred in failing to develop the record on the severity of her mental impairments, and specifically, in denying her request for a post-hearing consultative mental evaluation.  The obligation for an ALJ to develop the record further "is triggered only when there is ambiguous evidence or when the record is inadequate to

12

allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Plaintiff claims that this obligation was triggered by Dr. Bishop's Axis V score of "about 30"[4] as well as the previously-discussed references to mental retardation and borderline intellectual functioning. The GAF score of 30 was given by a physician who saw Plaintiff only during her hospitalization for an acute episode of depression. The ALJ, on the other hand, had the benefit of a significant amount of medical and non-medical evidence covering a substantial period of time which indicated that Plaintiff's adaptive capabilities were much higher than this one-time score would indicate. The ALJ had no obligation or need to seek out additional information as to Plaintiff's mental and cognitive abilities.

Plaintiff also makes a general argument that the ALJ erred by failing to consider the effect of all of Plaintiff's impairments, including her non-severe ones, on her ability to work. The only specific impairment identified by Plaintiff in this argument, however, is obesity. At the time of the hearing, Plaintiff weighed approximately 279 pounds. The ALJ specifically found that Plaintiff's obesity was a severe impairment. Furthermore, his finding that Plaintiff has the RFC to perform only sedentary work indicates that he considered the effects that her obesity would have on her exertional capabilities. *See Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) (observing that ALJ's finding that

---

[4] A GAF of 40-31 indicates some impairment in reality testing or communication OR major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. A score of 30-21 is given where behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment OR inability to function in almost all areas. DSM-IV at 34. A score of 30 is clearly incompatible with the ability to work.

13

plaintiff was limited to sedentary work was in itself a significant limitation.). Plaintiff points to no manner in which her obesity limits her non-exertional capabilities. Her non-specific argument that the ALJ did not consider the effect of her obesity on her ability to work is unavailing.

With regard to her impairment of obesity, Plaintiff raises the additional argument that the ALJ committed error in failing to satisfy the requirements of Social Security Ruling 02-1p. This ruling explains that obesity may cause limitations in function and requires the ALJ to assess the effect of obesity on the claimant's ability to perform the necessary movement and physical activity in the work environment, taking into account fatigue or other combined effects of obesity and other impairments. It is clear to the undersigned that although the ALJ did not specifically mention SSR 02-1p, he considered Plaintiff's obesity in determining her ability to perform work-related functions. He questioned her about her weight at the hearing, and he found it to be a severe impairment. The undersigned finds no error in the ALJ's evaluation of Plaintiff's obesity.

The fact that the ALJ limited Plaintiff to a reduced range of sedentary work indicates that he gave careful consideration to the limitations imposed by all of her impairments. Plaintiff has failed to provide any support for her general allegation that the ALJ failed to fulfill his obligation to the combined effect of all her impairments. This argument is without merit.

## IV. **Conclusion**

For the reasons stated herein, the undersigned recommends that Plaintiff's motion be denied, that the Commissioner's motion be granted, and that the decision of the Commissioner be affirmed. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 31st day of January, 2012.

                                          /s/ F. Keith Ball  
                                        UNITED STATES MAGISTRATE JUDGE